**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| TIERENEY SPRINGFIELD | ) | |
| | ) | |
| v. | ) | Civil No. JFM-12-2391 |
| | ) | |
| RICH PRODUCTS CORPORATION | ) | |
| ―――――――――――――――――――――― | ) | |

**MEMORANDUM**

Plaintiff Tiereney Springfield brings this race and sex[1] discrimination suit against her former employer Rich Products Corporation under Title VII of the Civil Rights Act of 1964, as amended, 42. U.S.C. §§ 2000e *et seq.*, and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. §§ 4-21-101 *et seq.*  Springfield, who is an African-American female, alleges that Rich Products discriminated against her on the basis of both race and sex when it refused her transfer requests and later transferred her to a different shift based on a shift transfer request made by a Caucasian, male employee.  Springfield also asserts sex discrimination claims based on her temporary suspension by Rich Products during an investigation of alleged violations of company policy and her later discharge for these violations.

Now pending is Rich Products' motion for summary judgment.  (ECF No. 17.)  The issues have been fully briefed, and no hearing is necessary.  *See* Local Rule 7.2(d) (W.D. Tenn. 2011).  For the following reasons, Rich Products' motion for summary judgment is granted.

---

[1] Although Rich Products refers to Springfield's sex discrimination claim as one for gender discrimination, the court refers to her claim as alleged sex discrimination prohibited by the statute.  *See* 42 U.S.C. § 2000e-2(a).

**Background**

Springfield, an African-American female, was hired in October 2008 as a Quality Assurance Technician at Rich Products' facility in Arlington, Tennessee.  (Pl.'s Response to Statement of Undisputed Facts [hereinafter Undisputed Facts] ¶¶ 1-2, ECF No. 22.)  She held that position until she was discharged on July 29, 2011.  (*Id.* ¶ 2; *see also* Termination Letter, Crackler Dep., Ex. 12, at 56, ECF No. 22-1.)  As a Quality Assurance Technician, Springfield was not a part of the bargaining unit at the union facility, and her employment was not subject to the terms of the collective bargaining agreement that protected the employment contracts of union members.  (*See* Undisputed Facts ¶ 4.)

Springfield initially worked on the second shift from 2:00 p.m. to 10:30 p.m. but was later transferred to the first shift from 6:00 a.m. to 2:30 p.m. based on her seniority.  (*Id.* ¶ 5.)  For a period of time, Springfield was assigned a unique shift from 4:00 a.m. to 12:30 p.m. during which she swabbed machines for microbes.  (*Id.* ¶ 6.)  Springfield resumed her prior hours on the first shift when Rich Products eliminated the unique 4:00 a.m. shift and assigned responsibility for swabbing the machines to Jason Mitchell, an African-American, male temporary worker on the third shift, which was from 10:30 p.m. to 6:00 a.m.  (*Id.* ¶¶ 7, 10.)

In August 2010, Springfield made a request to return to the unique 4:00 a.m. shift so that she could attend classes at Lane College, but her request was denied.  (*Id.* ¶¶ 8, 12.)  In November 2010, Springfield was told that she would be transferred to the third shift because of a transfer request by a Caucasian, male co-worker, William Casey, to change from the third shift to the first shift.  (*Id.* ¶ 10.)  At that time, Springfield was the least senior employee on the first shift, and Casey had more seniority than she had.  (*Id.* ¶ 11.)  Rich Products delayed Springfield's transfer until January 2011 after the end of her fall courses.  (*Id.* ¶ 12.)  Neither the

denial of Springfield's August 2010 transfer request nor her November 2010 transfer affected her pay rate.  (*Id.* ¶ 14.)  In June 2011, Springfield requested a transfer to the second shift but subsequently withdrew her transfer request.  (*Id.* ¶ 13.)  Springfield maintains that she withdrew her request because her supervisor, Kenneth Williams, had already denied it by telling her that "she could not 'bump' a second-shift employee with less seniority."  (*Id.*)

In July 2011, Springfield sent an email to Williams alleging that Mitchell had acted in an aggressive manner toward her.  (*Id.* ¶ 15.)  Mitchell denied the allegations and alleged that Springfield had violated company policies.  (*Id.* ¶ 16.)  The relevant provisions of Rich Products' Standards of Conduct provide that:

> (1) "[s]leeping or loafing during work time" may result in corrective action ranging from "counseling to termination without prior warning, depending on the severity of the violation;" and (2) "[u]sing company machinery, office equipment, tools and equipment or company material for personal use, unless authorized by management," will result in progressive action.

(*Id.* ¶ 20.)  The three management representatives involved in making disciplinary decisions regarding Springfield and Mitchell were Springfield's supervisor, Williams, an African-American male; the Quality Assurance Manager, Steve Cackler, a Caucasian male; and the Human Resources Manager, Sabrina Fields, an African-American female.  (*Id.* ¶¶ 3, 27.)

Mitchell showed Rich Products' representatives photographs and a video depicting (1) persons the representatives believed to be Springfield and Dawn Becton, an African-American, female union employee, sleeping on the job and (2) a person the representatives believed to be Springfield playing solitaire at a computer terminal.  (*Id.* ¶ 17.)  Springfield claims, however, that she is not depicted in the photographs and video.  (*Id.*)  Springfield and Becton were suspended pending the outcome of the investigation into the alleged violation of company policies.  (*Id.* ¶ 18.)

3

After the conclusion of the investigation, Kendric Degraffreed, an African-American, male union employee, determined by Fields to be depicted in a video eating popcorn and watching a computer monitor, received a written warning for being in the lab where he did not belong past his allotted break time.[2]  (*Id.* ¶¶ 19, 21.)  Printyce Ousley, an African-American, male union employee, received a "verbal coaching" for having been "in the wrong place at the wrong time" even though he did have a "business reason" for being there.  (*Id.* ¶ 23.)

Becton was suspended for another three days for either sleeping or having her head down and not working and for having watched a movie.  (*Id.* ¶ 21.)  Springfield claims that Becton was later discharged in relation to the investigation.  (*Id.*)  Rich Products claims that Becton's later discharge was unrelated to these incidents.  (Def.'s Reply at 8; *see* Fields Dep. at 76-77.)

Mitchell's temporary assignment was terminated after the investigation. (Undisputed Facts ¶ 25.)  Rich Products claims it terminated Mitchell's assignment because he (1) had participated in the same misconduct as Springfield; (2) had been covering for Springfield; and (3) had violated company policy by taking photographs and videos on his cell phone during work hours.  (*Id.*)  Springfield claims that Mitchell's discharge was actually due to a critical error he made that caused Rich Products to lose production and money.  (*Id.*)

After the investigation and on or about July 29, 2011, Springfield was discharged from her position.  (*Id.* ¶ 24.)  Rich Products claims it terminated Springfield's employment because (1) she had been sleeping on the job and using work computers for personal use; (2) she had participated in downloading movies; and (3) she and Mitchell had likely been covering for each

---

[2] Facts not disputed by evidentiary support are considered undisputed for the purposes of summary judgment in accordance with Local Rules 56.1(b) and 56.1(d), which require the non-moving party to demonstrate that a fact stated by the movant is disputed by providing a specific citation to the record.  (*See also* Def.'s Reply at 6, ECF No. 25.)

other[3].  (*Id.* ¶ 24.)  Springfield claims her discharge was the result of unequal treatment and
unlawful discrimination because of her sex.  (*Id.*)  Although Rich Products has hired another
male temporary employee in the Quality Assurance lab, it has not filled Springfield's full-time
Quality Assurance Technician position.  (*Id.* ¶ 28.)

Springfield timely filed a charge of discrimination with the United States Equal
Employment Opportunity Commission ("EEOC") and received a right-to-sue letter from the
EEOC fewer than 90 days before filing suit in this court on May 23, 2012.  (Compl. ¶ 4.)

## Legal Standard

A court may properly award summary judgment when the record shows that there is no
genuine issue as to any material fact and that the movant is entitled to judgment as a matter of
law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine
dispute about a material fact exists only "if the evidence is such that a reasonable jury could
return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248
(1986).  When reviewing a motion for summary judgment, the court must look at the facts and
inferences drawn therefrom in the light most favorable to the non-moving party.  *Scott v. Harris*,
550 U.S. 372, 378 (2007).

The burden is on the moving party to demonstrate the absence of any genuine issue of
material fact.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The non-moving party
may not merely rest upon allegations or denials in pleadings but must, by affidavit or other
evidentiary showing, set out specific facts showing a genuine issue remains for trial.  Fed. R.
Civ. P. 56(c)(1)(A).  A court should enter summary judgment where a non-moving party fails to

---

[3] Rich Products also relies on the fact that Springfield held a leadership position as Quality
Assurance Technician.  (Undisputed Facts ¶ 24.)

make a sufficient showing to establish the elements essential to the party's claim and on which the party will bear the burden of proof at trial.  *See Celotex*, 477 U.S. at 322.

If there is insufficient evidence for a reasonable jury to render a verdict in favor of the non-moving party, there is no genuine issue of material fact, and summary judgment may be granted.  *See id.* at 248.  Summary judgment is inappropriate, however, if there exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson*, 477 U.S. at 250.

**Analysis**

## I.  Title VII Discrimination Claims

Title VII's anti-discrimination provision renders it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a)(1).  The Sixth Circuit has recognized that a plaintiff can prove an intentional discrimination claim under Title VII by direct or circumstantial evidence.  *Ondricko v. MGM Grand Detroit, LLC*, 689 F.2d 642, 648-49 (6th Cir. 2012) (citing *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004)).  "Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions," and circumstantial evidence is proof that does not on its face establish discriminatory animus but allows a fact-finder to draw a reasonable inference that discrimination occurred.  *Id.* at 649 (quoting *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999) and citing *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997)).

The United States Supreme Court has set forth a burden shifting scheme for analyzing an intentional discrimination claim under Title VII when a plaintiff seeks to prove her case through circumstantial evidence. *Texas Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (elaborating burden shifting scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under the *McDonnell Douglas/Burdine* approach, a plaintiff must first establish a *prima facie* case by a preponderance of the evidence showing that she: (1) is a member of a protected class; (2) was qualified for the job; (3) suffered an adverse employment decision; and (4) was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees. *See Serrano v. Cintas Corp.*, 699 F.3d 884, 892-93 (6th Cir. 2012) (citing *White v. Baxter Healthcare Grp.*, 533 F.3d 281, 391-93 (6th Cir. 2008)).

Once the plaintiff has established the elements of her *prima facie* case, "the burden shifts to the defendant to offer evidence of a legitimate, nondiscriminatory reason for the adverse employment action." *Serrano*, 699 F.3d at 893. If the defendant successfully shows such a reason, "the burden shifts back to the plaintiff to show that the defendant's proffered reason was not its true reason, but merely a pretext for discrimination." *Id.*

In order to rebut a defendant's proffered reasons as mere pretext, a plaintiff must establish that the proffered reasons either (1) had no basis in fact; (2) did not actually motivate the challenged decision; or (3) were insufficient to motivate the challenged decision. *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008) (emphasis omitted). The Sixth Circuit has embraced the "modified honest-belief doctrine" whereby an employer can avoid a finding that its proffered, nondiscriminatory reasons are pretext if it can establish "its reasonable reliance on the particularized facts that were before it at the time the decision is made." *Id.* at 605 (quoting *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 708 (6th Cir. 2006) (emphasis omitted). Under this

7

doctrine, the employee has an opportunity to introduce contrary evidence, but the court need not find the employer's decision-making process optimal, "only reasonably informed and considered." *Id.*

### A.  Race or Sex Discrimination Based on Shift Transfer Actions

Springfield alleges that Rich Products unlawfully discriminated against her on the basis of race and sex when it denied her requests to transfer from one shift to another and later transferred her as a result of a request of a Caucasian, male employee.  Rich Products contends that Springfield's claims based on the shift transfer actions are time barred, that she cannot demonstrate a *prima facie* case of race or sex discrimination based on those actions, and that she cannot show that the nondiscriminatory reasons proffered by Rich Products for the shift transfer actions are, in fact, pretext for unlawful discrimination.  Because the court finds that Springfield cannot establish the essential elements of her *prima facie* discrimination case with respect to the shift transfer actions, it need not decide whether her claims in relation to the shift transfer actions are timely or whether she can establish that Rich Products' proffered, nondiscriminatory reason is pretext.

Rich Products argues that Springfield cannot meet her initial burden of establishing the three elements of a *prima facie* discrimination case because the shift transfer actions were not adverse employment actions.  The Sixth Circuit has held that an adverse employment action results in a "materially adverse change in the terms and conditions of employment [which] must be more disruptive than a mere inconvenience or an alteration of job responsibilities."[4]  *Hollins v. Atl. Co.*, 188 F.3d 652, 662 (6th Cir. 1999) (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*,

---

[4] The Sixth Circuit's definition of adverse employment action applies equally to all Title VII discrimination claims including both retaliation and disparate treatment claims.  *White v. Burlington N. & Santa Fe Rwy. Co.*, 364 F.3d 789, 799 (6th Cir. 2004).

8

993 F.2d 132, 136 (7th Cir. 1993)).  Further, temporary or "*de minimis* employment actions are not materially adverse and, thus, not actionable."  *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000).  In *Hollins*, the court cited examples of an adverse employment action such as "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."  188 F.3d at 662.

In the Sixth Circuit, an adverse employment action usually "inflicts direct economic harm" on the plaintiff, *White v. Burlington N. & Santa Fe Rwy. Co.*, 364 F.3d 789, 798 (6th Cir. 2004), *aff'd sub nom. Burlington N. & Santa Fe Rwy. Co. v. White*, 548 U.S. 53 (2006) (citing *Burlington Indus. v. Ellerth*, 524 U.S. 742, 762 (1998)), and "reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims," *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996) (citing *Yates v. Avco Corp.*, 819 F.2d 630, 638 (6th Cir. 1987)).  Although it is not clear from *Kocsis* whether the term "work hour changes" refers only to a reduction in the number of hours an employee works or also to an alteration in the time of day of an employee's shift, the adverse change in work conditions must be material.  *See* 97 F.3d at 885; *see also Cherry v. Unipres U.S.A., Inc.*, No. 3:04CV0036, 2006 WL 288645, at * 6 (M.D. Tenn. Feb. 6, 2006)[5] (finding plaintiff's shift transfer did not result in materially adverse change in employment because she was not demoted; her pay was not decreased; her benefits did not change; her responsibilities did not change appreciably; and action affected all third-shift employees equally).  Neither a publicly perceived loss of prestige nor an employee's subjective impressions as to the desirability of one

---

[5] I cite unpublished opinions not as precedent but for the persuasiveness of their reasoning.

position over another are relevant to the determination of whether there is a change in conditions or terms of an employee's work. *Kocsis*, 97 F.3d at 885-86.

In this case, the court must determine whether any one of the three shift transfer actions—the denial of Springfield's August 2010 request, the November 2010 notification of her mandatory shift transfer[6], or her June 2011 "withdrawn" request—constitutes an adverse employment action. It is undisputed that neither the August 2010 denial nor the November 2010 transfer affected Springfield's pay rate (Undisputed Facts ¶ 14), and each of Rich Products' shifts, including the unique 4:00 a.m. shift, lasted 8.5 hours (*Id.* ¶¶ 5-6, 10). Thus, the transfer actions did not cause a reduction in Springfield's hours or pay, and the only change was in the time of day Springfield worked her 8.5-hour shift. Springfield argues, however, that the November 2010 shift transfer adversely impacted her ability to attend school and contends that the court in *Kocsis* implied that it would consider a change to the time of day of an employee's shift to be an adverse employment action. *Kocsis*, 97 F.3d at 885-86.

Assuming *arguendo* that Springfield's academic work would have increased her earning power, a shift transfer prohibiting her from attending school represents at most an indirect economic harm to her future earnings. Because the Sixth Circuit has emphasized the "direct economic harm" of an adverse employment action, the court finds that Rich Products' actions with respect to Springfield's shift transfers do not satisfy the definition of an adverse employment action. *See White*, 364 F.3d at 798. Accordingly, Springfield fails to establish the elements of her *prima facie* case, and the court enters summary judgment in favor of Rich Products in relation to the shift transfer actions.

---

[6] Rich Products delayed Springfield's mandatory shift transfer to January 2011 (Undisputed Facts ¶¶ 10, 12), but the court will refer to that action as the November 2010 shift transfer because Rich Products notified Springfield of the transfer in November 2010 and a limitations period began for that action at that time.

## B.  Sex[7] Discrimination Based on Suspension

Rich Products argues that Springfield cannot show that its proffered legitimate, nondiscriminatory reason for her suspension—the video and photo evidence of a person its representatives believed was Springfield violating company policy—is merely pretext.[8] Springfield must show that this reason was not based in fact; did not motivate Rich Products to suspend Springfield; or was insufficient to motivate Rich Products to suspend her.  *See Russell*, 537 F.3d at 604.

First, Springfield does not offer evidence to challenge the fact that the videos Mitchell showed to Rich Products' representatives depicted people they believed to be Springfield and Becton violating company policy and that those two employees were then suspended pending an investigation into the matter.  Springfield denies those facts but does not provide specific evidence raising a question of material fact sufficient to survive summary judgment.

Second, Springfield states that sex discrimination motivated Rich Products' decision to suspend Springfield and Becton but does not offer sufficient evidence to support her claim.  In fact, she concedes in her deposition testimony that she does not think that Fields was discriminating against her on the basis of race or sex.  (Springfield Dep. 87:13-15; ECF No. 20-1.)  Springfield asserts that two female employees, she and Becton, were suspended in relation to the incident while male employees, including Degrafreed, Ousley, and Mitchell, were not.  She

---

[7] As Rich Products notes, Springfield does not assert a claim of race discrimination based on her suspension but claims that her "suspension was the result of unequal treatment and discrimination because of her sex."  (Undisputed Facts ¶ 18; *see* Def.'s Reply at 5, ECF No. 25.)

[8] Contrary to Springfield's assertion (Pl.'s Opp. at 9), Rich Products does not contest the validity of Springfield's *prima facie* case on summary judgment.  The court need not analyze the *prima facie* elements of Springfield's case nor determine whether her temporary suspension constitutes an adverse employment action because it finds that she cannot establish pretext.

does not, however, provide evidence showing that Rich Products had reason to suspend the male employees who were not implicated by video or photo evidence as were Springfield and Becton.

Third, Springfield makes no argument that Rich Products' stated reason for suspending her was insufficient to motivate that employment decision.  Indeed, suspension of employees during an investigation of disciplinary infractions is standard protocol at Rich Products.  (*See* Response to EEOC Request for Information, Undisputed Facts, Ex. 1, at 78, ECF No. 22-1.) Springfield's disagreement with the facts uncovered during the investigation does not create a genuine issue of material fact that would defeat summary judgment "as long as an employer has an honest belief in its proffered nondiscriminatory reason."  *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001).  Accordingly, Springfield cannot establish pretext, and the court grants summary judgment to Rich Products with respect to Springfield's suspension.

### C.  Sex[9] Discrimination Based on Termination of Employment

Rich Products contends that Springfield cannot establish a *prima facie* case of sex discrimination based on the termination of her employment because she was not replaced and cannot present evidence of an adequate comparator who was treated more favorably.  It also argues that she cannot establish that Rich Products' proffered reason is pretext.

It is clear that Springfield can establish the first three elements of her *prima facie* discrimination case because (1) she is a woman (2) who was qualified for her position as Quality Assurance Technician, and (3) she suffered an adverse employment action when her position at Rich Products was terminated.  *See Serrano*, 699 F.3d at 892-93.  To establish the fourth element

---

[9] As noted by Rich Products, Springfield does not assert a claim of race discrimination based on her discharge but claims her "termination was the result of unequal treatment and unlawful discrimination because of her sex."  (Undisputed Facts ¶¶ 24, 29; *see* Def.'s Reply at 4; Pl.'s Opp. at 9.)

of her *prima facie* case, however, Springfield claims that she was replaced by a male employee and that Rich Products treated her less favorably than Mitchell, who she asserts is a similarly situated employee.

First, it is undisputed that Rich Products hired a male temporary employee on the third shift instead of a full-time employee.  (Undisputed Facts ¶ 28.)  Springfield offers no evidence that the new male temporary employee replaced her and not Mitchell, the temporary employee whose position was also terminated.  Second, Springfield's claim that she was treated less favorably than a similarly situated male employee fails because her status as a full-time employee prevents Mitchell, a temporary employee, from being an appropriate comparator. Springfield's other suggested comparators, Degraffreed and Ousley, are not similarly situated because they are both union members whose positions are protected by a union contract. Furthermore, Rich Products had no objective evidence that either Degraffreed or Ousley had violated company policies in comparison to the video evidence of Springfield and Becton sleeping while on duty.

Accordingly, because Springfield fails to establish her *prima facie* case, the court enters summary judgment for Rich Products with respect to Springfield's discharge and need not consider whether Springfield can establish that Rich Products' proffered, nondiscriminatory reason is pretext.

## II.  THRA Discrimination Claims

The anti-discrimination provision of the THRA, consistent with its Title VII counterpart, establishes that it is an unlawful discriminatory practice for an employer to "[f]ail or refuse to hire or discharge any person or otherwise to discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race,

creed, color, religion, sex, age or national origin." Tenn. Code Ann. § 4–21–401(a)(1). The Supreme Court of Tennessee has established that courts considering discrimination claims under the THRA should apply the same analysis used for Title VII discrimination claims. *Parker v. Warren Cnty. Util. Dist.*, 2 S.W.3d 170, 172-73 (Tenn. 1999). Accordingly, the analysis of Springfield's Title VII discrimination claims applies to her THRA discrimination claims, and the court enters summary judgment in favor of Rich Products on all of Springfield's discrimination claims under the THRA.

## Conclusion

For the foregoing reasons, Rich Products' motion for summary judgment is granted. A separate order follows.

July 31, 2013                                  /s/ J. Frederick Motz
Date                                                J. Frederick Motz
                                                        United States District Judge